Good morning, Your Honors, and may it please the Court, Alana Gutierrez for Petitioner Artemi Matveenok. I'd like to reserve three minutes for rebuttal. Okay, and Counsel, if you could either speak up or move the microphone a little bit closer to you, I'd appreciate it. Yes, certainly. An immigration judge's fundamental misunderstanding of bisexuality and the BIA's failure to correct certain errors has led to the three issues before this Court. First, the immigration judge failed to conduct a full and fair hearing in violation of Mr. Matveenok's due process rights. Second, the BIA erred by not conducting a proper cumulative analysis of past incidents of harm and by failing to address the pattern and practice of persecution argument. Finally, the BIA conducted an erroneous cat analysis where this analysis was based on the erroneous well-founded fear analysis. This brings me to the first issue before the Court. Mr. Matveenok testified that he is bisexual, explaining that he's attracted to both men and women and has shared romantic relationships. Let me ask you a question which would help me make some determination in this case. BIA ruled no credibility determination, thus credible, right? Correct, yes. So we have to give your client the benefit of being credible in what he said, correct? Correct. All right. But then they said, even though credible, the evidence was insufficiently persuasive to satisfy his burden of proof. So what they said is there's a credible guy here, but the evidence he gave us was just insufficient to meet the burden that he had, right? Correct. Okay. My worry about this starts right at the first. They said that the petitioner was credible, and then they wanted this petitioner to give some corroborating evidence of the facts that he was giving at the hearing, right? Correct. Did he get sufficient notice and an opportunity to provide this corroborating evidence? No, he didn't, Your Honor. Tell me why. So he did present corroborating evidence and then- Well, he gave the evidence that he had on him at the time. Correct. And then further evidence was identified by the immigration judge only in her oral decision, giving him no opportunity to get that particular evidence. And the BIA also referenced this evidence in the immigration judge's requirement of it in their opinion, again, thus not giving him any opportunity to explain whether he could obtain it. So counsel, let's say hypothetically, I agreed with you on the way you've recited the facts, and I'm going to be talking to your friend about this. And let's say also, hypothetically, I agreed that even though you didn't do a lot, you did enough to raise it before the agency in your BIA brief. This issue is nowhere in your opening brief, correct? Yes. The issue of corroboration, other than our arguments regarding the erroneous understanding of bisexuality, there is not a more specific argument. But you didn't even cite 1158, right? I don't believe so. Okay. So the government has argued that the government anticipated perhaps you were going to make this argument, or specifically said in their answering brief, you never made it. Why is this issue of corroboration that hypothetically with you I agree is a problem, why is your failure to raise it in your opening brief not constituting deemed waiver? So we do believe that it was raised in a less precise form. Tell me where first, and then you can finish that argument. But where exactly in the blue brief is it? We believe that would be at the record site 26 to 27. Although your heading for that is the board erred in denying cat protection. I apologize, Your Honor. I may have missed... That's what I have in my notes currently. I'm certainly happy to look and give you that specific site on rebuttal. All right. So let's assume you really didn't raise it in your opening brief. Why isn't that waiver? Why should we not deem it waived? For that, we truly believe that the due process issue is at the core of this, and that because of that issue, it was so fundamentally unfair that we don't reach these other issues. So would you argue that this error by the agency in saying you didn't corroborate and not giving you notice of that except in the order when combined with the issue relating to misdefinition of what it takes to be bisexual, that if we deemed this issue of corroboration waived, it would result in a fundamental miscarriage of justice? Yes, Your Honor. If I understand you correctly, yes. Go ahead with your argument. My good colleague robbed my questions. He went right where I was going. I was going to say, and where do you present this to me so I can really look at it? And he got ahead of that. So go ahead. And I will present that. I apologize. That isn't, don't apologize. I thought you didn't really... He did a lot better job than I would have done anyway. I have never done a better job than you've done, Judge Smith. Because I felt like you presented it to the BIA. In fact, I went through the stuff that I was going to say. I thought you did that, but his questions were exactly where I was going. Where to give it to me? How do you help me know? That's why it's important. I understand. Okay. Just to close out the due process issue, we believe that it's so pervasive. It's cited in the judge's findings, his lack of... Basically, her reference to her erroneous definition of bisexuality. It's cited in the past persecution analysis, in the withholding analysis, and in the CAT analysis. And so we believe that the BIA erred by not remanding this to the judge to correct these issues and hold a full and fair hearing. As to the second point of past persecution, substantial evidence does not support the BIA's finding that the past incidents of harm do not rise to the level of persecution. The BIA failed to do a genuine cumulative review of the past incidents of harm that Mr. McBainock has experienced. Well, I mean, getting past your first issue and moving to this issue, I'm looking at the BIA. And they say that... They summarize that he endured multiple incidents of harm, bullying, physical assault, that he argues that the immigration judge failed to consider it cumulatively, that the immigration judge should have considered his young age, et cetera, et cetera, et cetera. And then they say that he wasn't subject to significant physical violence during the assault or serious physical injuries. So they've discussed this for several paragraphs vis-a-vis past persecution. If there weren't some other error, why would we be compelled to say that every reasonable adjudicator would have had to have come to a different decision? We... Essentially. We agree that they went through... They named different instances of past harm, but we don't believe that they did the required analysis as required by Salguero-Sosa. And which that case says that it cannot... A true, genuine, cumulative review looks at all of the incidents together, to come... But they did... Go ahead. But they don't have to list everyone, right? No, they do not, Your Honor. And they said, we therefore agree with the IJ that on this record, your client did not demonstrate that the harm, even when considered cumulatively and even taking into account his young age, was sufficiently egregious to constitute persecution. I mean, maybe we would, if we were the IJ or the BIA, maybe we would come to a different decision, but that's not the test, right? Yes, Your Honor. And... And just because one could apply more weight on some event than another does not compel a contrary conclusion. And again, my good colleague read the exact phrase. You start, we therefore agree, taking in cumulatively his young age, all of that seems a little bit tough to get by on this standard of review. Yes, Your Honor. So, we believe that their focus was much like the immigration judges on what they believed the case lacked and not focused on what was actually there in the record, as far as evidence, as far as his testimony to past incidents. And in particular, they placed a lot of weight on the physical harm aspect, which certainly is a factor and an important factor. But we don't believe they genuinely looked at all of the incidents together based on this analysis that they have here. They also argued that the government here, the police that were involved, and the government medical staff that outed Mr. McBee not during his exam, that these were merely officials misbehaving, which is not what happened here, based on the facts, based on the testimony that they had to take as credible. So, we don't believe that that analysis is supported by substantial evidence. Even if the court is to find that the BIA was correct, we do believe that Mr. McBee not can show a well-founded fear of future and that the one of the issues here is that the BIA failed to address the pattern or practice argument that we made. And they are not entitled to ignore arguments, but here they did. We do believe, Bromfield is the case on point here as to pattern or practice where there was fear found when Jamaica criminalized same-sex acts. Here, the Russian government goes much further than that, we believe. Besides banning same-sex marriage, they've banned the international LGBT movement at large. That was by their Supreme Court. They have gay propaganda laws where something as simple as psychiatric treatment is applied to people in the LGBTQ community. Sexual orientation and gender-based crimes are not considered hate crimes, and there's a lot of country convictions evidence that show that the police routinely fail to investigate crimes or even perpetrators of violence themselves. So, we believe that following Bromfield's reasoning, there is a clear pattern and practice of persecution against members of the LGBTQ community in Russia. I want to take you back to the first issue we were talking about because it seems to me that if we can't find that you have really talked about this notice issue, except on a due process general theory, is there a good case that I can look at that allows me to say, you know, let's give those guys another chance. They didn't really plead it to me very well. They just generally hit me with a due process idea. And they could have talked about notice pretty straight, and they didn't. An opportunity? I mean, Wren, I get Wren cited to me every day, and yet it wasn't in your brief. So, I'm saying, do you have a good case for me? I see that I'm out of time, mate. Yeah, I'll give you some extra time. We do believe that under, I may mispronounce this, but I believe it's bar AV bar. That is the case that states that these issues don't have to be raised in a precise form and can be expanded on more specifically later, which is what we believe we did here by raising the issues concerning the IJ's credibility, specifically looking at his sexual experience and the other pieces of evidence she stated. Okay. All right. Thank you. We'll give you a minute for a rebuttal. Whenever you're ready, counsel. Okay. Thank you. Thank you, Judge Bennett. May it please the court, Joseph Hardy for the Attorney General. Your Honor, for the reasons we state in our brief, we ask that the court deny the petition. I do want to address the lack of corroboration finding. Petitioner still doesn't grapple with the fact that the board found that she didn't challenge the immigration judge's lack of corroboration finding as to whether petitioner is bisexual. Her failure to address that particular issue sufficiently or at all, actually, is dispositive of her asylum claim, her withholding of removal claim, and her cat claim, as petitioner points out. Counselor, counselor, let me stop you. Before the BIA, the petitioner... I mean, I'm having real trouble with your idea that this was not presented to the BIA. There's a statement right in the record that says the IJ misapplied the law regarding corroboration. Respondents' credible testimony and corroborative evidence satisfied his evidentiary burden. Respondent's evidence was relevant and of the type requested by the court. Additional corroboration was not needed to establish the elements. Respondent also provide explanation for why other evidence was unobtainable and believes his available evidence outweighs any purported lack of evidence. Further, should additional corroboration be deemed necessary, the IJ did not give respondent proper notice or opportunity to explain it or explain its unavailability. The BIA said that. Two things, Judge Smith. One, I'm going to talk to you about the Wren issue and the notice. The first thing I want to point out is the question isn't whether petitioner actually raised it to the board because petitioner, as I said, she... Well, if the board discusses it, it doesn't matter whether they raise it or not. If the board discusses it and tries to come up with an idea about it, which I read you, then it's still an issue to them and can come up to us if they make the proper appellate argument to me. Okay. And then the board went on and it said that petitioner did not submit sufficient evidence. So petitioner argued that the board erred in finding that they did not submit sufficient evidence. Just a minute. The last sentence says, should additional corroboration be deemed necessary, the IJ did not give the respondent proper notice, did not give the respondent an opportunity to provide it or explain its inability. Right there. Well, petitioner's argument in this case, it was not that the immigration judge found, erred in finding that she lacks sufficient corroboration. It was that the board erred in finding that. And I point out to you in the brief that even to the extent that she says that, and so the question was asked, where did petitioner raise that specific argument? She actually didn't fully raise it because if you look at page 22, that's as we point out in the brief, she starts off by pointing out that in addition to the mother's letter, I also submitted, or he, excuse me, I also submitted the wanted poster and I submitted the text messages. And then there's a sentence that begins, this evidence demonstrates, but it's cut off. I point that out in the footnote, I believe on page 26 of my brief. So I don't even have an argument to respond back to. So counsel, do you concede that the immigration judge based her ruling in part on the failure of the petitioner to submit corroboration? To submit sufficient corroboration, judge. And then the question, that's the second part. That's my... So your answer to my question is yes. My answer to that is yes. Okay. And second, do you agree that the law, the cases, the rules, the regulations require the IJ to have provided petitioner notice before deciding that petitioner had failed to submit sufficient corroborating evidence? Yes, I do. And I will show you exactly where... Do you concede that if we were to find that either petitioner sufficiently raised the issue, exhausted and then raised the issue here, or that the regs require us to reach it even if it wasn't sufficiently raised? And I understand that you disagree that both of those things happened or that either of them happened. But if we find that it was sufficiently raised or the law requires us to reach it, would you agree that that would require a remand? If it was sufficiently raised in the brief, which again, I would argue that it wasn't, I would say yes, that's something that you could get to. All right. So let me... I'm looking at what the IJ did here in basically... And I don't even think this is hyperbole, saying essentially, you can't be bisexual if you haven't had sex with members of your gender. I don't think that is an exaggeration of essentially what the IJ did. And then went from there as to what corroboration you need to show that you're bisexual. In addition to striking me as totally wrong, basing a deportation decision on that with no opportunity to deal with this corroboration issue, with our not dealing with it, would result in our participating in a miscarriage of justice. Why am I wrong? I would say that you're 100% wrong on both issues, actually, because the immigration judge specifically gave a petitioner an opportunity. And that's what I started to say earlier. If you look at page... And I actually had to print out the colloquy because I wanted to be able to read it to you for this specific issue. Pages 204 to page 210. After a petitioner testified during his direct examination and then testified during his cross-examination by the government, then the immigration judge asked questions. Sir, what does it mean to you to be bisexual? I'm attracted to guys and girls. That's where the immigration judge, as you point out, asks, have you had sex with men? He says, no. I didn't quite understand the sponsor thing, but asked if the sponsor, Mikhail Stepanov, was gay. The immigration judge there is trying to get to, well, could we get a letter from Mr. Stepanov? He says, Mr. Stepanov is not gay. He has never met Mr. Stepanov. He lives in Philadelphia with someone that he met in an immigration chat when he was in Mexico. Jax, had you had sex with a woman? He says, no. He says, sir, do you have any records of your social media posts on VKontakte? That's the social media app that he says he was a member of some LGBT group on VKontakte. He says, yes, on my phone, but I don't have them. That's where the immigration judge asks, sir, who besides your mother knows that you're bisexual? He says, my ex-friend, Vitaly, that's the, I don't quite understand how he got a declaration from him if he's his ex-friend, but that letter is on page 350 of the record. He says, yes, you have that, but he's no longer friends with Mr. Vitaly or with Vitaly. So then the immigration judge says, sorry. Counselor, I think the question is, why wouldn't the petitioner be allowed to then provide that kind of evidence at some later point? Again, there's a notice and an opportunity to provide that. If you look at Wren, this court specifically says, yes, the immigration judge has to give notice, but it doesn't mean that the immigration judge has to continue the case another day for petitioner to submit this evidence. It's to give notice of the opportunity, notice of the requirement for corroboration. Petitioner himself says he has evidence, but he just didn't submit it. He submitted the mother's letter, but as I point out, he talks about the mother's letter. He talks about the wanted poster. He talks about the social media post, or excuse me, the text messages. But if you look at page 22, as I said, where would the opportunity to provide that information come? How does that? It's, are you talking about in terms of due process? The court has never said in, I mean, it's never said that, again, that you have to set another hearing date. Mind you, petitioner never asked for another hearing date when the immigration judge pointed out, again, on pages 204 to 210, what evidence do you have that you're bisexual? He points to the letter from the friend, but again, we don't have here where petitioner actually challenges the immigration judge's reasons for rejecting the things that he actually had in the record. So he submitted evidence. It just wasn't sufficient. So, I mean, how many rounds do we have to go? If he submits another letter from someone and that letter is equally by someone who has no firsthand knowledge or something of his sexuality, how many more times does he have to get before he's able to corroborate? I think your position then, what you're arguing is the notice that was provided. So I understand your position. You're not, the notice that was provided in the questions that were asked, that's the notice that you're indicating was provided. That is the only notice that Wren versus Holder requires. It does not, again, require another opportunity, an opportunity. And I would even point out, Judge, that this hearing was, the merits hearing itself was on February 24th, 2025. The immigration judge didn't issue her decision until about a week or so later. If petitioner said that he had, for example, the social media post, he had a whole week where, you know, he came back. I believe he appeared by video, but Ms. Gutierrez appeared in court. He had a whole week where he could have submitted the additional evidence to the immigration judge, but he never asked. He was represented by counsel ably. He never asked the immigration judge for additional time. He never even submitted it in the time that he had before he came back for the hearing. I'm looking at Wren, and it says notice of the corroboration required, and this is from Wren, and an opportunity to either provide the corroboration or explain why he cannot do so. That's quoting from Wren. Where is that that happened here that you can point to the record? Point that to me. Where he's had an opportunity. The opportunity is where the immigration judge specifically asks him. You can't say that I didn't get an opportunity where you thereafter don't, he doesn't ask for. I mean, it's kind of disingenuous to say, well, I didn't have an opportunity. The language says, counsel, the language in Wren, or explain why he cannot do so. Where, where was that explanation allowed? Where was it? Sir, do you have records of your social media posts on BeContacted? That's page 207. Yes, on my phone, but I don't have them with me. That's something petitioner has been, had been represented by counsel. You have the opportunity. All that that is required by this is that petitioner received notice. Again, it doesn't require a split, especially where you don't ask for it, an opportunity for you to have to continue the hearing for you to submit anything. If anything asked for it, be told by the immigration judge that no, I'm not going to do that. But at the end of the hearing, the immigration judge asked counsel, is there any other evidence that you have? She says, no. Okay. Let's set a hearing date. It's late in the day. I can't give you a I should be able to have one to you within about a week. Petitioner at that point, counsel could have asked, well, can we submit additional evidence? She did not do so, nor did she say that there was any other evidence that she would have submitted. That's also something I don't see here. Petitioner is still relying on the credible testimony, and she's not recognizing as Judge Smith, I believe you pointed out. She doesn't say to, to the statute where it specifically says, yes, testimony, if credible may be sufficient, but only if it's credible, persuasive and refers to specific facts in the record where the immigration judge asked for corroboration. It must be submitted unless petitioner explains that he that it was unreasonable for him to do so. There's never been a statement by petitioner here that it was unreasonable for him to submit corroborating evidence. And was the corroborate was the corroborating evidence that the IJ looking for that petitioner and it had sex with men. So that was, and I, that was the immigration judge says that if there's a suggestion, and that may be what you were saying earlier, Judge Bennett, I'm not quite sure if there's a suggestion that an immigration judge could never ask whether you've had sexual relationships with anyone in the past and determining your sexuality. I would say that's wrong. And I would say that's inconsistent with this court's case law. I would cite to you Udo versus Garland 32 F 4th 1198. It was a 2022 case. And where it's this court, the alien was found to not be credible and that he did not corroborate his claim that he was homosexual, and that he had been harmed on account of his homosexuality. And the court said that the board did not give reason consideration to an excommunication notice in the record. Counsel at page 28 of your brief, you say, with final respect to petitioners, persecution claims, the immigration judge did not deny him relief due to any misunderstanding of bisexuality. And is it the government's position that a necessary condition of being bisexual is having sex with the same gender? Absolutely not. That was not what the immigration judge was suggesting. The immigration I respect respectfully. I think that's exactly what the immigration judge was suggesting. Judge did not say that it was the only thing that he could have done to corroborate whether he is, in fact, bisexual. The immigration judge, mind you, he just had however long the hearing was testimony before his attorney testimony before the government council. And he never really says what bisexuality means to him or say anything that corroborates his testimony until the immigration judge starts to ask him about it towards the end of the hearing on page 204. And so, again, you have the immigration judge asking about whether he had sex with men and women. You have him asking, basically, he was trying to get to whether Mr. Stepanoff could have corroborated your testimony. He asks about the social media posts. And then when he doesn't have any of that, that's where the immigration judge asks, well, who besides your mother knows? And he says Vitaly. But then again, we don't have a defense of the Vitaly letter. Again, at page 350, we don't have any contesting of why the immigration judge found that letter was or any of the evidence was insufficient. So I say I'm well over my time, but unless the court has any other questions, I would ask that you deny the petition. Do my colleagues have any additional questions? All right. Thank you, counsel. Thank you. Just briefly, I wanted to clarify a couple of things. I understand there's this issue about whether the issue of corroboration was raised sufficiently, but hypothetically, if this court were to find it was under Barre, just as to the notice that the judge gave, she did question him about photographs and posts to a Russian social media site. And he responded that he did have those. She didn't give any responses to whether she found that sufficient, whether he could get them where they were. But I think the real issue is here is that the very specific pieces of evidence that she identified in her oral decision were not those pieces of evidence that she asked about during testimony. They were entirely different. So as to those specific pieces of evidence that she said would corroborate his bisexuality and thus membership in his PSG, he did not have notice of until she brought them up in the oral decision. All right. Thank you, counsel. We thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. All rise.
judges: SMITH, BENNETT, MENDOZA